# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DAVID M. SUIRE,

    Petitioner,

v.

WARDEN RICKY FOXWELL and
MARYLAND ATTORNEY GENERAL,

    Respondents.

Civil Action No.: JKB-19-252

## MEMORANDUM OPINION

In response to petitioner David Suire's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, respondents assert that the petition must be dismissed because the claims are unexhausted and procedurally defaulted. ECF 5. Although petitioner was granted 28 days to file a response to the claims asserted by respondents, he has not filed anything further. The court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons stated below, the petition is dismissed and a certificate of appealability is declined.

### Background

In 2013 and 2014 petitioner stood trial in the Circuit Court for Wicomico County on charges of theft and check-cashing fraud, with some of the charges including victimization of vulnerable adults. *See State v. Suire*, Case Nos. 22-K-13-000410; 22-K-13-000411; 22-K-13-000810 (Cir. Ct. Wicomico Co.) at http://casesearch.courts.state.md.us/casesearch/. The pending petition before this court concerns the judgment issued in connection with Case No. 22-K-13-

000411 involving petitioner's acts of forgery, fraud, and theft against 92-year-old Melvin Bradley.

The Maryland Court of Special Appeals summarized the operative facts for that case as follows:

> In Case No. 411, the State alleged, in an 11-count charging document, that, 'between the 18th day of March and the 5th day of April, 2013,' Suire committed various forgery, fraud, and theft crimes against 92-year-old Melvin Bradley. Mr. Bradley had hired appellant to perform some work on his house, which was to include installing a new roof. Trial occurred in Case No. 411 on October 1, 2013, and the evidence was as follows.
>
> Mr. Bradley testified that, sometime in early February 2013, appellant approached him in his yard and "wanted to know if I had any carpentry work or roofing work or anything like that." Mr. Bradley and appellant agreed, informally, to a series of different repairs to be performed by appellant. Mr. Bradley wrote appellant a check for $972.17 "immediately," so that appellant could get started. Over time, Mr. Bradley started to feel that "the price was getting a little high," so he kept a list of checks he wrote to appellant, with check numbers, dates, and amounts. This list was marked for identification at trial as State's Exhibit 4. It showed that, according to Mr. Bradley's tally, he had written appellant checks totaling in excess of $39,000 during the four-week span between February 28 and March 30, 2013. This sum struck Mr. Bradley as being "a little high" for the work appellant had done.
>
> The main focus of the State's case was two checks, numbered 8255 and 8256, drawn on Mr. Bradley's account at M&T Bank. Check 8255 was dated "5 Apr 2013," and was made payable to the appellant in the amount of $2,000. Check 8256 was dated "April 2, 2013," and likewise was made payable to the appellant in the amount of $2,000. Both memo lines indicated the checks were for roof work. Copies of the front and back of both checks were admitted together as State's Exhibit 6. Mr. Bradley testified that he did not sign either of those checks, nor did he authorize appellant to either sign his name or to take any checks from his checkbook. Mr. Bradley was also shown a check that was admitted into evidence as State's Exhibit 7. He testified that Exhibit 7 was a check that appellant brought to him, told him it had gotten wet, and asked Mr. Bradley to write a replacement check, which Mr. Bradley did. It was not until later that Mr. Bradley looked at the "wet check" appellant had given him, and realized that he had not signed that check either.
>
> Admitted into evidence as State's Exhibit 8 were certified records of M&T Bank pertaining to Mr. Bradley's checking account. Those records were replete with exemplars of Mr. Bradley's signature. State's Exhibit 3 was a paper Mr. Bradley signed in front of the jury as an example of his signature. The differences between the signatures of the drawer on Exhibit 8 and the signatures on Exhibit 6 were pointed out for the jury's consideration.

> Cpl. Durbin Hamilton, of the Wicomico County Bureau of Investigations, testified that she interviewed appellant on April 18, 2013, following his arrest on the previous day. After Cpl. Hamilton gave appellant Miranda warnings, the officer recorded an interview of appellant, which was admitted, in redacted form, as State's Exhibit 2. Appellant was questioned about his involvement in the thefts of checks from Mr. Bradley, as well as in the other two cases on appeal here.

ECF 5-1 at 121-2 (footnote omitted). During the course of his questioning by Hamilton, petitioner denied forging checks or stealing checks from Mr. Bradley, but late in the interview appeared to admit he stole the checks. *Id.* at 122. Additional testimony was provided at trial by a teller from M&T Bank, Julie Cody, who was familiar with Mr. Bradley, knew his signature, and noticed checks drawn on his account and cashed by Ace Check Cashing did not appear to bear his signature. *Id.* at 123. Although defense counsel objected to Cody's testimony regarding her observation that the signature did not appear to be genuine, the State proffered at a bench conference that it was Cody's suspicion about the signature that prompted her to contact Mr. Bradley about the checks. *Id.* at 123-4.

The jury convicted petitioner on one count of forgery and counterfeiting (Md. Code Ann., Crim. Law § 8-601(a)); two counts of issuing a false document (Md. Code Ann., Crim. Law § 8-602); and theft under $1,000 (Md. Code Ann., Crim. Law § 7-104). On January 30, 2014, petitioner was sentenced to serve a term of incarceration totaling 20 years. ECF 5-1 at 124.

On direct appeal petitioner claimed the charging document was jurisdictionally invalid, he was improperly denied counsel at the initial appearance, a motion for mistrial was improperly denied, the evidence was legally insufficient to support a guilty verdict, and the sentences imposed were improper. ECF 5-1 at 55-66. Petitioner's conviction was affirmed, but the Court of Special Appeals found that the trial court should not have imposed separate sentences for forgery under

Count 7 and vacated the sentence imposed for Count 7. *Id.* at 136-39. Petitioner did not seek certiorari review in the Maryland Court of Appeals.

On August 19, 2016, the Circuit Court for Wicomico County issued an order pursuant to the Court of Special Appeals Mandate clarifying petitioner's sentences. ECF 5-1 at 144. The order specified that a 10-year sentence imposed under Count 8 is to be served concurrently with the sentence imposed in K13-0410 and the 10-year sentence imposed under Count 10 is to be served consecutively with Count 8. *Id.*

Petitioner filed a motion to correct an illegal sentence under Md. Rule 4-345(a), which was denied on December 1, 2016. ECF 5-1 at 156.

On October 3, 2016, petitioner filed a self-represented post-conviction petition alleging "*Brady* issues," violation of the Confrontation Clause, ineffective assistance of appellate counsel for allowing consolidation of all of his direct appeals for disposition; and ineffective assistance of trial counsel for failing to file pre-trial suppression motions and mistakenly subpoenaing the wrong person[1] to testify for the defense. ECF 5-1 at 148-55. An amended post-conviction petition filed by counsel clarified that the ineffective assistance of trial counsel claim regarding pre-trial suppression motions pertained to trial counsel's failure to move for suppression of petitioner's statement to the police. ECF 5-1 at 159-71. The amended petition also raised the ineffective assistance of counsel claim in connection with the failure to subpoena Lindsay Timmons and the failure to seek review of the sentence by a three-judge panel or reconsideration of the sentences by the trial judge. *Id.*

---

[1] Trial counsel neglected to subpoena Lindsay Timmons, an employee of Ace Check Cashing, who could have testified that their procedure before cashing a check is to contact the person who purportedly wrote the check to verify that it was an authorized draft.

4

Following a hearing on the post-conviction petition, a stipulation concerning Timmons was entered by the parties. *Id.* at 179. The stipulation provided that:

> A material witness, Lindsay Timmons, resides outside of the [S]tate of Maryland. If called at the post conviction hearing, Ms. Timmons would testify that she does not know David Suire or Melvin Bradley and that she has no recollection of the transaction at issue in the present case. She would further testify that she worked at Ace Check Cashing during the relevant time period, but is no longer employed there. Ms. Timmons would further testify that her recollection is that the policy of Ace Check Cashing was to contact the account holder or the bank to verify a personal check upon presentation, but she has no recollection of whether she followed the policy in this case.

*Id.* at 180.

On July 30, 2018, the post-conviction court denied relief on all grounds except for petitioner's assertions that counsel was ineffective for failing to seek sentencing review. Petitioner was granted a belated opportunity to file motions for a three-judge panel review and for reconsideration of this sentence. *Id.* at 182-201. Petitioner filed an application for leave to appeal the denial of post-conviction relief on the remaining claims and asserted the post-conviction court erred when it did not address his *Brady* claim or his claim that appellate counsel was ineffective by allowing three cases to be consolidated for purposes of appellate review. *Id.* at 202-09. The Court of Special Appeals denied the application without opinion. *Id.* at 226-27.

Petitioner also pursued a claim regarding whether the sentence imposed for Count 8 that was noted to be "concurrent" with a sentence in Case No. 22-K-13-000410 should have been given a start date that did not match the start date provided for the sentence imposed in Case No. 22-K-13-000410. *Id.* at 217-25. Relief was denied, with the Circuit Court for Wicomico County noting that "the appeal did not result in any need for a new sentence, new calculation of credit for time served, or a new commitment order. The Division of Corrections has correctly advised . . . that the sentence under Count 8 begins on January 29, 2014." *Id.* at 214-15.

In his petition filed in this court, petitioner asserts that trial counsel rendered ineffective assistance of counsel when he failed to allow petitioner to accept a guilty plea; summoned the wrong witness to trial; and did not permit him to testify. ECF 1 at 5. Petitioner acknowledges that he has not presented the asserted grounds regarding the plea offer and his right to testify on his own behalf to the state courts for review. *Id.* at 6.

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) (a state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2)

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington*, 562 U.S. at 101 (emphasis in original) (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citations omitted). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 365.

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have

7

"resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (quoting *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir.2003)).

## Analysis

### I. Exhaustion and Procedural Default

#### A. Exhaustion

When filing a federal habeas corpus application under 28 U.S.C. § 2254, a petitioner must show that all of his claims have been presented to the state courts. 28 U.S.C. § 2254(b), (c); *see also Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider it. For a person convicted of a criminal offense in Maryland, this may be accomplished either on direct appeal or in post-conviction proceedings. The claims presented by petitioner that are not exhausted concern the allegations that trial counsel was ineffective for rejecting a guilty plea and for advising petitioner not to testify at trial. The appropriate avenue for exhausting such claims is through post-conviction proceedings.

To exhaust a claim through post-conviction proceedings, it must be raised in a petition filed in the Circuit Court and in an application for leave to appeal to the Court of Special Appeals. Md. Code Ann., Crim. Proc. § 7-109. If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202. However, if the application is granted, but relief on the merits of the claim is denied, the petitioner must file a petition for writ of certiorari to the Court of Appeals. *Williams v. State*, 292 Md. 201, 210-11 (1981). Petitioner did not present these claims to the post-conviction court; they are therefore unexhausted. Claims raised on federal habeas review that are unexhausted are usually

8

dismissed without prejudice; however, respondents assert that this failure to exhaust has led to a procedural default of these two claims.

B.   Procedural default

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the[] merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

As the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman*, 501 U.S. at 731-32. A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is

9

actually innocent.[2] *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U S. 298, 314 (1995).

If this court concludes under 28 U.S.C. § 2254(b)(1)(B)(i) that there is an absence of available State corrective process, an unexhausted claim becomes a procedurally defaulted claim. *See Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1) ("A procedural default also occurs when a habeas petitioner fails to exhaust available State remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"). Maryland law limits the number of post-conviction petitions that may be filed to one. Md. Code Ann., Crim. Proc. § 7-103. A motion to reopen those proceedings must be supported by claims that are in the interest of justice for the post-conviction court to consider. Md. Code Ann., Crim. Proc. § 7-104.

Under Maryland law, "the interest of justice" standard is limited and cannot be supported by new grounds asserted in support of a previously rejected ineffective assistance of counsel claim. This is particularly true where, as here, petitioner knew of the grounds he failed to raise when he

---

[2] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Here, petitioner has not asserted any basis for actual innocence, nor has he provided any other basis for excusing his procedural default.

10

initially raised the ineffective assistance of counsel claim. The waiver of those grounds need not be "knowing and intelligent." *See State of Maryland v. Syed*, 463 Md. 60, 102 (2019) (reopening provision was added to accommodate the occasional meritorious case where the convicted person had already filed a postconviction petition). Here, petitioner fully litigated an ineffective assistance of counsel claim in connection with the failure to move to suppress his statement to police and the failure to subpoena Timmons. The underlying factual grounds for the unexhausted ineffective assistance of counsel claims are based on matters occurring at trial and were known to petitioner at the time he filed his post-conviction petition. There is no basis for reopening those proceedings; therefore, the grounds asserted are procedurally defaulted.

## II. Ineffective Assistance of Counsel

Petitioner also raises a claim of ineffective assistance of counsel that is properly before this court for consideration, and which concerns counsel's failure to subpoena Lindsay Timmons as a witness for the defense. When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the Court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696.

Because the instant petition is subject to the provisions of the federal habeas statute, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"),

in order to obtain relief on his ineffectiveness claims, the petitioner must show that the adjudication of such claims at the state court level:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Supp.1997). The Act further provides that:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* § 2254(e)(1).

As the Supreme Court held in *Strickland v. Washington, supra,* "a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d) [ now § 2254(e)(1)]." *Id.* at 698. Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e)(1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that § 2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this Court may not grant relief on this claim, as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

As noted, there was a stipulation between petitioner and the State's Attorney regarding the content of Ms. Timmons' expected testimony. The post-conviction court found that testimony unpersuasive in light of the other evidence introduced at trial, commenting that: "[t]he rhetorical

12

musings of an employee describing her company's standard policy for accepting checks does nothing to defeat the affirmations of a testifying victim." ECF 5-1 at 196. The post-conviction court further noted that the mistake at issue was not intentional and that trial counsel's "inadvertent mistake" in subpoenaing the wrong witness was not ineffective assistance of counsel. *Id.* The post-conviction court's analysis does not represent an unreasonable determination of the facts, nor is it an unreasonable application of well-established law. Petitioner has failed to "show that the state court's ruling on the claim . . . was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington*, 562 U.S. at 103).

## Conclusion

Having found that the sole claim properly raised in the petition before this court is without merit and the other claims are procedurally defaulted, the petition for writ of habeas corpus shall be denied. An additional consideration required of this court is to determine if the matters raised warrant the issuance of a certificate of appealability. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Petitioner may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th

Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate order follows.

Dated this __13__ day of November, 2020.

FOR THE COURT:

James K. Bredar
Chief Judge